IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| NATALIE NICHOLE RAMOS, On Behalf of Wendy Carol M.[1], | § § § | |
| Plaintiff, | § § | |
| v. | § § | 2:20-CV-202-Z-BR |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | § § § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO AFFIRM
THE DECISION OF THE COMMISSIONER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff, on behalf of Wendy Carol M., deceased, ("Wendy") seeks judicial review of the decision of the Commissioner of Social Security, who denied Wendy's application for disability insurance benefits under Title II of the Social Security Act ("SSA") for lack of disability. The United States District Judge referred the case to the undersigned pursuant to 28 U.S.C. § 636(c). After considering the pleadings, briefs, and administrative record, the undersigned recommends that the Commissioner's decision be AFFIRMED.

**I.     PROCEDURAL BACKGROUND**

Wendy applied for disability insurance benefits on March 19, 2018, alleging disability due to high blood pressure, back pain, and swollen feet since January 20, 2018. (ECF 19-1 at 60, 71, 149–50). Wendy's application was initially denied on September 13, 2018 and was denied again

---

[1] It is this Court's practice to identify the plaintiff using only the first name and last initial in determinative opinions in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

upon reconsideration on January 9, 2019. (*Id.* at 85–88). Wendy requested a hearing, and a video hearing was held on July 26, 2019. (*Id.* at 39–58). The Administrative Law Judge ("ALJ") issued an unfavorable decision on December 5, 2019, finding Wendy not disabled in his sequential analysis prescribed by Fifth Circuit law. (*Id.* at 17–28).

Specifically, at step one, the ALJ found Wendy had not engaged in substantial gainful activity since her alleged onset of disability date of January 20, 2018. (*Id.* at 22). At step two, the ALJ found Wendy suffered from the severe impairments of osteoarthritis of the right foot and bilateral hands, a bilateral foot disorder, lumbar degenerative disc disease with sciatica, hypertension, and obesity. (*Id.* at 22–23). At step three, the ALJ found those severe impairments did not meet, and were not the equivalent of, any impairments listed in Appendix 1 of the social security regulations. (*Id.* at 23–24). Still at step three, the ALJ determined Wendy's residual functional capacity ("RFC"). (*Id.* at 24–27). The ALJ found Wendy had the RFC to:

> lift and carry 20 pounds occasionally and 10 pounds frequently. [Wendy could] sit for about 6 hours during an eight-hour workday and [could] stand and walk for about 6 hours during an eight-hour workday. [Wendy could] occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. [Wendy could not] climb ladders, ropes, or scaffolds. [Wendy could] frequently handle and finger. 20 CFR 404.1567(b).

(*Id.* at 24). In other words, the ALJ found that Wendy could perform a reduced range of "light work." (*See id.*); 20 C.F.R. § 404.1567(b).[2] At step four, the ALJ determined Wendy was capable

---

[2] The relevant social security regulation states:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

2

of performing her past relevant work as an informal waitress, short order cook, and cashier II, as this work does not require the performance of work-related activities precluded by Wendy's RFC. (*Id.* at 27). Accordingly, the ALJ found Wendy was not disabled under the SSA between the alleged onset date and the date the decision was issued. (*Id.* at 27–28).

The Appeals Council denied Wendy's request for review on June 25, 2020. (*Id.* at 5–7). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See* 42 U.S.C. § 405(g); *Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) ("[C]ourts generally agree that when the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision.") (quoting *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005)).

## II. FACTUAL BACKGROUND

Wendy was 55 years old on the alleged onset of disability date, January 20, 2018. (*See* ECF 19-1 at 59, 70). She completed the tenth grade. (*Id.* at 45, 192). Her work history included employment as an informal waitress, short-order cook, and cashier II. (*Id.* at 27, 54–55, 192–93, 197–205).

## III. STANDARD OF REVIEW

To evaluate a disability claim, the Commissioner follows a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

A person is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

3

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

In reviewing disability determinations by the Commissioner, the court's role is limited to determining (1) whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and ultimate decision, and (2) whether the Commissioner applied the correct legal standards or if any errors of law were made. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997).

To determine whether substantial evidence of disability exists, the court must consider four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, then they are conclusive and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir.

1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Only a "conspicuous absence of credible choices," or, "no contrary medical evidence," will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. If the court finds substantial evidence to support the Commissioner's decision, the court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

## IV.   DISCUSSION

In her Complaint (ECF 1), Memorandum of Law (ECF 21), and Reply (ECF 27) to Defendant's Brief, Plaintiff asserts that Wendy's physical impairments rendered her disabled under the SSA. Plaintiff seeks an order from the Court vacating the Commissioner's decision denying Wendy's claim for disability insurance benefits and remanding the matter for further administrative proceedings based on one ground: that the ALJ failed to properly weigh the opinion of Dr. Deborah Lea Moore, a consultative examiner, in assessing Wendy's RFC. (ECF 21 at 12–18). The Commissioner responds that the ALJ properly considered all of the medical opinion evidence in the record and properly determined that Wendy was capable of performing a reduced range of light work. (ECF 26 at 2–7). For the reasons discussed below, the Court agrees with the Commissioner.

### A. Medical Opinion Evidence

On January 18, 2017, the SSA published *Revisions to Rules Regarding the Evaluation of Medical Evidence*, which revised the regulations regarding medical opinion evidence considered

in disability determinations. 82 Fed. Reg. 5844. For claims filed on or after March 27, 2017, an ALJ no longer must "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. 404.1520c(a)).

Instead, the ALJ shall consider five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including (a) length of the treatment relationship, (b) frequency of examinations, (c) purpose of the treatment relationship, (d) extent of the treatment relationship, and (e) examining relationship); (4) specialization; and (5) other factors, such as familiarity with the other evidence in the claim or an understanding of disability policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a), (c). "The most important factors" for the ALJ to consider in "evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . ." *Id.* § 404.1520c(a).

Therefore, the ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [a claimant's] determination or decision," and may, but is not required to, explain how he considered the other three factors when he articulates how he considered the medical opinions or prior administrative medical findings. *Id.* § 404.1520c(b)(2). The other three factors must be articulated, however, if there are "two or more medical opinions or prior administrative medical findings about the same issue [that] are both equally well-supported . . . and consistent with the record . . . but are not exactly the same[.]" *Id.* § 404.1520c(b)(3). When one medical source provides multiple opinions, the ALJ is not required to "articulate in each determination or decision how [he] considered all of the factors for all of the medical opinions and prior administrative medical

6

findings in [a] case record." *Id.* § 404.1520c(b)(1). The SSA makes clear that "[i]t is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he] considered all of the factors for all of the medical opinions and prior administrative medical findings in [a] case record." *Id.* § 404.1520c(b)(1).

**B. Dr. Moore's Opinion**

Deborah Lea Moore, M.D., a consultative physician, examined Wendy on August 25, 2018 for complaints of high blood pressure, back pain, and right hip pain. (ECF 19-1 at 321). Dr. Moore noted that Wendy's pain was primarily located in the right sacroiliac joint, right lateral knee, and the top of her right foot. (*Id.*). Wendy also had nodules on the top of her feet, hand pain, and swollen joints. (*Id.*). Dr. Moore noted from her exam that Wendy had mild difficulty getting up from her chair and a mild limp, but that Wendy was able to get onto the exam table without help and had no difficulty changing positions. (*Id.* at 322). She did not use an assistive device. (*Id.*).

Dr. Moore concluded that Wendy had multiple conditions, including a foot disorder that "limit[ed] her ambulation greatly"; an impaired sensation of her right leg with correspondent sacroiliac joint pain; hypertension; and arthritis of the hands. (*Id.*). Dr. Moore opined that Wendy's functional capacity included that she had "severe limits with standing and walking due to foot pain and right radiculopathy"; had no sitting limit; could lift 5 pounds or less; could not operate foot pedals; had vision limitations; and had limits to gripping, handling, fingering, and feeling due to arthritis of the hands. (*Id.* at 323).

As part of his RFC determination, the ALJ "did not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from [Wendy's] medical sources. However, [he] fully considered the medical opinions and prior administrative medical findings[.]" (ECF 19-1 at 26). In doing so, he

concluded that "[t]he opinion of the consultative examiner, Deborah Lea Moore, M.D., was unpersuasive." (*Id.*).

### C. The ALJ's Decision

The Court finds that the ALJ properly considered the medical opinions, including the opinion of Dr. Moore, in assessing Wendy's RFC. Specifically, the ALJ properly explained how he considered the supportability and consistency factors when evaluating Dr. Moore's medical opinions. (*See* ECF 19-1 at 25–26; ECF 21 at 14–17); 20 C.F.R. § 404.1520c(b)(2).

In determining Wendy's RFC, the ALJ considered Wendy's treatment records; the medical opinions of record; Wendy's daily activities; the nature, duration, frequency, and intensity of Wendy's symptoms, Wendy's approach to medication (*i.e.*, that she was prescribed medications but stated that she did not take them); other treatment Wendy had or had not undergone; and other measures Wendy took to address her symptoms (*e.g.*, that she "report[ed] using a walker for ambulation outside the home," but admitted that it was not prescribed and did not use it at work); Wendy's functional limitations; Wendy's earnings at the part-time job she held after the disability onset date; and other evidence in the record. (*See* ECF 19-1 at 22–27, 44–46, 49, 224, 250, 286–87, 307–11); 20 C.F.R. §§ 404.1520c(b)–(c).

In regard to supportability, the regulations state: "T]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The ALJ explained why he found Dr. Moore's opinion, which included that Wendy had limited ambulation, severe limits with standing and walking, and limits to gripping, handling, fingering, and feeling due to arthritis of the hands, to be "not supported by Dr. Moore's exam of [Wendy], as seen from

8

the description of the exam"—*i.e.*, the medical evidence and supporting explanations. (ECF 19-1 at 25–26); *see* 20 C.F.R. § 404.1520c(c)(1). However, the ALJ found that the findings of reconsideration State medical consultant Dr. Robin Rosenstock and initial State medical consultant Dr. Kim Rowlands were more relevant to their respective medical opinions, because "each provided some support for their findings in the form of explanations." (ECF 19-1 at 25–26). As such, the ALJ found Dr. Moore's opinions to be less persuasive than Dr. Rosenstock's and Dr. Rowlands opinions. (*Id.*).

Regarding consistency, the regulations state: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ found that Dr. Moore's opinion was "inconsistent with Dr. Rosenstock's findings, discussed and found persuasive below, and with the evidentiary considerations which underlie that persuasiveness assessment." (*Id.* at 26). The ALJ detailed why he found "Dr. Rosenstock's findings to be consistent with [the medical and non-medical] evidentiary considerations" in the record, and why he found Dr. Rowland's opinions to be "unpersuasive as to standing and walking limitations (but persuasive otherwise, since her findings otherwise overlap with Dr. Rosenstock's)." (*Id.* at 26–27). The ALJ noted that while "there have been significant abnormal clinical signs, such as intermittent spinal tenderness and intermittently positive SLR . . . there is also a substantial body of pertinent normal clinical signs, such as normal strength and normal or (at the consultative exam) mildly limping gait," and Dr. Rosenstock's findings were "consistent with these evidentiary considerations." (*Id.*). Thus, the ALJ "adopted [Dr. Rosenstock's findings] as the [RFC]

assessment, save for where [he] found greater or additional limitation, giving [Wendy] some benefit of the doubt." (*Id.*).

The ALJ identified inconstancies in the evidence, explained why Dr. Moore's opinion regarding Wendy's limitations was not supported by and consistent with the record as a whole, and exercised his responsibility as factfinder to weigh the evidence and choose the limitations to incorporate into his RFC assessment that were most supported by the record. (*See id.* at 22–27); *Turner-Clewis v. Saul*, No. 4:20-CV-372-A, 2021 WL 2302770, at *9 (N.D. Tex. May 19, 2021), *report and recommendation adopted*, No. 4:20-CV-372-A, 2021 WL 2291738 (N.D. Tex. June 4, 2021); *see also* 20 C.F.R. § 404.1545(a)(3) (requiring an ALJ to consider medical opinions together with the rest of the relevant evidence in the record); *Moore v. Saul*, No. 3:20-cv-48-DPJ-MTP, 2021 WL 909618, at *6 (N.D. Tex. Feb. 1, 2021) (noting the "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.").

As such, the Court finds that the ALJ applied the correct legal standards and did not made any errors of law. *See Kinash*, 129 F.3d at 738. The Court also finds that there is substantial evidence in the record, considered as a whole, to support the ALJ's factual findings, including that Wendy was capable of performing a reduced range of light work, and ultimate decision. *See id.*; *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam) ("If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed."); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) ("The court may not reweigh the evidence or try the issues *de novo* or substitute its judgment for that of the [Commissioner]."); *Moore v. Comm'r of Soc. Sec.*, No. 3:20-CV-241-SA-DAS, 2021 WL 2834395, at *3 (N.D. Miss. July 7, 2021) ("[I]t is the ALJ's duty and prerogative to choose between

the conflicting evidence to assess the RFC, and because this part of the decision is supported by substantial evidence, it cannot be disturbed on appeal.").

## V.   RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Commissioner's decision be AFFIRMED.

## VI.   INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO ORDERED.

ENTERED October 19, 2021.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). *Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed* as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district

court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).